**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| CORNELL UNIVERSITY and CORNELL RESEARCH FOUNDATION, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> AT&T INC., AT&T ENTERPRISES, LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES, INC., <br><br> *Defendants.* | Civil Action No.: _____ <br><br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS CORNELL UNIVERSITY'S AND CORNELL RESEARCH**
**FOUNDATION, INC.'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Cornell University and Cornell Research Foundation, Inc. (collectively, "Cornell or "Plaintiffs") file this Complaint for patent infringement against Defendants AT&T Inc., AT&T Enterprises, LLC, AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services, Inc. (collectively, "AT&T" or "Defendants") and allege as follows:

**NATURE OF THE ACTION**

1.       This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271, *et seq*.

2.       AT&T has infringed and continues to infringe at least one claim of Cornell's U.S. Patent Nos. 7,839,775 ("the '775 Patent") and 7,965,733 ("the '733 Patent") (collectively, "the Asserted Patents"). The '775 Patent is attached as Exhibit A, and the '733 Patent is attached as Exhibit B.

3.       This action involves Cornell's patented wireless communications technology

1

relating to Wi-Fi 5 (and later) enabled downlink and Wi-Fi 6 (and later) enabled uplink products, including Wi-Fi routers, access points, smartphones, client devices, and related products and services sold by AT&T.

4.      Wi-Fi 5, also known as IEEE 802.11ac, is an industry-standardized technology introduced in or about 2013 that brought advancements in wireless communication, including faster Internet speeds, better performance in the 5 GHz band, and increased capacity for handling high-bandwidth activities.  Wi-Fi 5 introduced Multiple User Multiple Input Multiple Output (MU-MIMO) technology for more efficient multi-device connectivity and enhanced throughput, and beamforming to improve signal strength and reliability for connected devices.

5.      Wi-Fi 6, also known as IEEE 802.11ax, is an industry-standardized technology introduced in or about 2018 that enables faster Internet speeds, better nationwide coverage, improved battery life, enhanced latency that minimizes lag time for real-time activities such as video calls, increased efficiency that allows numerous devices to connect at the same time, and improved security with Wi-Fi Protected Access 3 ("WPA3") encryption. Wi-Fi 6 improved MIMO functionality by introducing Uplink MU-MIMO, enabling multiple devices to transmit data to the access point simultaneously, in addition to enhancing Downlink MU-MIMO with better efficiency and support for more simultaneous users.

6.      Plaintiffs seek damages and other relief for AT&T's infringement.

## THE PARTIES

7.      Plaintiff Cornell University is a private research university chartered as a not-for-profit education corporation under New York Education Law § 5701, *et seq*., with a principal place of business at Day Hall, Ithaca, New York 14853.

8.      Plaintiff Cornell Research Foundation, Inc. is a New York not-for-profit corporation, having its principal place of business at 395 Pine Tree Road, Suite 310, Ithaca, New

York 14850. Cornell Research Foundation is a wholly owned subsidiary of Cornell University, whose mission is to manage intellectual property invented by Cornell employees under Cornell University's Policy 1.5: Inventions and Related Property Rights, including obtaining patent, trademark, or copyright protection where appropriate and licensing intellectual property for commercial development and use.

9.      Defendant AT&T Inc. is a corporation organized and existing under the laws of Delaware.  AT&T Inc. has been registered to do business in Texas under Texas Secretary of State file number 0009294006 since October 2, 1992.  AT&T Inc. may be served through its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

10.     Defendant AT&T Enterprises, LLC is a limited liability company organized and existing under the laws of Delaware.  AT&T Enterprises, Inc. was registered with the Texas Secretary of State under file number 805330645.  On May 16, 2024, AT&T Enterprises, Inc. changed its registration with the Texas secretary of state to AT&T Enterprises, LLC.  AT&T Enterprises, LLC may be served through its registered agent, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  AT&T Enterprises, LLC is a subsidiary of AT&T Inc.

11.     Defendant AT&T Mobility LLC is a limited liability company organized and existing under the laws of Delaware.  As stated on the website of the Texas Secretary of State, AT&T Mobility LLC's Filing Number is 707861123, and the Original Date of Filing for AT&T Mobility LLC is November 21, 2000.  CT Corporation System is the registered agent for service for AT&T Mobility LLC and located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  AT&T Mobility LLC is a subsidiary of AT&T Inc.

12.     Defendant AT&T Mobility II LLC is a limited liability company organized and

existing under the laws of Delaware.  As stated on the website of the Texas Office of the Comptroller, AT&T Mobility II LLC's right to transact business in Texas is listed as "ACTIVE." AT&T Mobility II LLC's Texas Taxpayer Number is 18416599704, and AT&T Mobility II LLC's mailing address is 1010 N Saint Mary's Street, Room 9-Y01, San Antonio, Texas 78215-2109. AT&T Mobility II LLC may be served through AT&T Mobility LLC's registered agent for service, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  AT&T Mobility II LLC is a subsidiary of AT&T Inc.

13.    Defendant AT&T Services, Inc. is a corporation organized and existing under the laws of Delaware.  As stated on the website of the Texas Secretary of State, AT&T Services, Inc.'s Filing Number is 10935606, and the Original Date of Filing is April 5, 1996.  CT Corporation System is the registered agent for service for AT&T Services, Inc. and is located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  AT&T Services, Inc. is a subsidiary of AT&T Inc.

## JURISDICTION AND VENUE

14.    Cornell realleges the foregoing paragraphs as if fully set forth herein.

15.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

16.    Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

17.    Personal jurisdiction exists generally over the Defendants because each Defendant has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within Texas, including in the Eastern District of Texas.

18.    Personal jurisdiction also exists over each Defendant because each, directly, or through subsidiaries, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and/or services within Texas, including in the Eastern District of Texas, that

infringe one or more claims of the Asserted Patents.  Further, AT&T has placed or contributed to placing infringing products and/or services into the stream of commerce while knowing or understanding that such products and/or services would be sold and used in the United States, including in this District.  Defendants are each registered or authorized to do business in Texas and maintain an agent authorized to receive service of process within Texas.

19.    Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b), including but not limited to because AT&T has committed acts of infringement in this District and has a regular and established place of business in this District.  By way of example and without limitation, AT&T makes, uses, sells, offers to sell, and/or imports products and/or services that are accused of infringing the Asserted Patents into and/or within this District and maintains a permanent and/or continuing presence within this District.

20.    AT&T makes, uses, offers for sale, sells in and/or imports into the United States Wi-Fi 5 (and later) enabled downlink and Wi-Fi 6 (and later) enabled uplink products and services, including Wi-Fi routers, access points, smartphones, and related products and services.

21.    The accused products and services that infringe the Asserted Patents include, without limitation, AT&T Internet services with Wi-Fi, Wi-Fi routers, access points, and/or client devices, and smartphones and tablets, including, for example, Google Pixel 8 smartphones, Motorola moto g stylus 5G smartphones, and Apple iPhone 16 Pro and iPad Pro 13-inch tablets. On information and belief, these products and services are sold and/or installed by AT&T employees located within the Eastern District of Texas and used by customers located within this District.

22.    AT&T operates numerous brick and mortar retail stores in the Eastern District of Texas.  These retail stores are physically located within this District, are regular and established

places of business of AT&T, and are used by AT&T to actively market and sell products and services that infringe the Asserted Patents.  By way of example and without limitation, AT&T's website provides an "AT&T Stores Near You" feature that shows the locations of such AT&T retail stores within this District.  *See, e.g.*, https://www.att.com/stores/ (last visited December 14, 2024).

23.     By way of example and without limitation, AT&T maintains brick and mortar retail stores in this District located, among other places, in Marshall (*e.g.*, 1712 E Grand Avenue, Marshall, Texas 75670) and Longview (*e.g.*, 2306 Gilmer Road, Longview, Texas 75604; 109 W Loop 281, Longview, Texas 75605; and 3407 N 4th Street, Suite 107, Longview, Texas 75605). *See, e.g.*, https://www.att.com/stores/.

24.     AT&T maintains a regular and established place of business in this District located at 2900 W Plano Parkway, Plano, Texas 75075, which it calls the "AT&T Foundry."  *See, e.g.*, AT&T, *AT&T Foundry Launches Innovation Space for Vertical Industries*, (Sept. 20, 2018), available at https://about.att.com/story/2018/plano_foundry.html (last visited December 14, 2024).

25.     AT&T has numerous employees who work in Texas, including within the Eastern District of Texas.  In addition to its many retail stores in Texas and in this District, AT&T also has its corporate headquarters located in Dallas, Texas.  *See, e.g.*, Kristine Titus, *Get a Peek Inside AT&T's Headquarters in Dallas*, AT&T, available at https://life.att.jobs/get-a-peek-inside-atts-headquarters-in-dallas-article/ (last visited December 14, 2024).

26.     AT&T's clients, routers, and access points are located in the Eastern District of Texas.

27.     AT&T has solicited business in the Eastern District of Texas, has transacted business within this District, and has attempted to derive financial benefit from the residents of the

Eastern District of Texas, including benefits directly related to AT&T's infringement of the Asserted Patents.

28.     In other recent actions, AT&T has either admitted or not contested that the Eastern District of Texas is a proper venue for patent infringement actions against it.  *ASUS Technology Licensing Inc. v. AT&T Corp.*, No. 2:23-cv-00486, Dkt. 19 ¶ 13 (E.D. Tex. December 26, 2023) ("To the extent a response is required, AT&T does not contest that venue is proper in this district for purposes of this litigation only."); *see also Daingean Techs. Ltd. v. AT&T Inc.*, No. 2:23-cv-00123, Dkt. 22 ¶ 24 (E.D. Tex. June 1, 2023); *Wireless Alliance, LLC v. AT&T Mobility LLC*, No. 2:23-cv-00095, Dkt. 11 ¶¶ 9-10 (E.D. Tex. May 26, 2023).

29.     Defendants are properly joined under 35 U.S.C. § 299(a) because, on information and belief, Defendants commonly and/or jointly make, use, sell, offer to sell, and/or import accused products and services such that at least one right to relief is asserted against Defendants jointly, severally, and in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, selling, offering to sell, and/or importing into the United States of the same accused products and services, such that questions of fact common to all Defendants will arise in this action.

## THE ASSERTED PATENTS

### United States Patent No. 7,839,775

30.     On November 23, 2010, the U.S. Patent and Trademark Office duly and legally issued the '775 Patent, entitled "Methods and Systems for Channel Sensing Multiple Access Communications with Multipacket Reception." The '775 Patent issued from a U.S. patent application filed on March 15, 2005.  The '775 Patent was subsequently reexamined by the U.S. Patent and Trademark Office, following reexamination request 90/013,914, and duly and legally

reissued as U.S. 7,839,775 C1 on June 28, 2017.  The '775 Patent relates, *inter alia*, to communication using carrier sense multiple access (CSMA) with multipacket reception (MPR).

31.    The inventors of the '775 Patent were Cornell employees at the time of the invention, Electrical and Computer Engineering Professor Toby Berger, PhD, and Douglas Chan, PhD.

32.    Cornell is the owner and assignee of the entire right, title, and interest in the '775 Patent and has the sole right to sue and recover damages for any current, past, or future infringement.

33.    The '775 Patent is valid and enforceable.

**United States Patent No. 7,965,733**

34.    On June 21, 2011, the U.S. Patent and Trademark Office duly and legally issued the '733 Patent, entitled "Systems and Methods to Detect and Avoid Collisions in Channel Sense Multiple Access Communications with Multipacket Reception."  The '733 Patent issued from a U.S. patent application filed on March 15, 2005.  The '733 Patent relates, *inter alia*, to methods and systems to perform collision detection (CD) in a communication network and over multipacket reception (MPR)-capable physical layers.

35.    The inventors of the '733 Patent were Cornell employees at the time of the invention, Electrical and Computer Engineering Professor Toby Berger, PhD, and Douglas Chan, PhD.

36.    Cornell is the owner and assignee of the entire right, title, and interest in the '733 Patent and has the sole right to sue and recover damages for any current, past, or future infringement.

37.    The '733 Patent is valid and enforceable.

## COUNT I: INFRINGEMENT OF THE '775 PATENT

38.     Cornell incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein.  Cornell further alleges the below upon information and belief.

39.     AT&T has directly infringed and continues to directly infringe the '775 Patent, either literally or under the doctrine of equivalents, including at least claims 1, 26, 44, 51, and 56, under 35 U.S.C. § 271(a), by making, using, offering to sell, selling, and/or importing into the United States, Wi-Fi 5 (and later) enabled downlink products and Wi-Fi 6 (and later) enabled uplink products, such as Wi-Fi routers, access points, smartphones, client devices, and related products and services.

40.     AT&T directly infringes at least claims 1 and 51 of the '775 Patent, for example, when its employees or agents install, use, service, and/or maintain AT&T's Internet services that support Wi-Fi 6 at customers' residences or places of business.  Specifically, AT&T installs routers, access points, hotspots, and wireless extenders, and connects them with clients at these locations to provide Internet service.  The access points for relevant accused products are found locally in AT&T's customers' residences and places of business.  Those residences and places of business are located in the Eastern District of Texas.  AT&T exercises control over the equipment that it installs by servicing, maintaining, configuring, and otherwise operating the equipment and obtains benefits including monthly subscription, maintenance, and support fees.

41.     AT&T directly infringes at least claims 26, 44, and 56 of the '775 Patent by, for example, selling tablets and smartphones such as, among others, the Google Pixel, iPad, and iPhone, or other devices that run on the Wi-Fi 6 (and later) network.  Beyond selling tablets or smartphones, AT&T provides the entire infrastructure through the installation and servicing of the routers and access points that enables the function of all terminals.  AT&T further directly infringes

at least claims 44 and 56 when it sells access points, wireless routers, or other downlink devices that run on a Wi-Fi 5 (and later) network.

42.    An illustrative example of the manner in which the accused products and services infringe the '775 Patent is set out in Exhibit C.

43.    Upon information and belief, AT&T has indirectly infringed and continues to indirectly infringe at least claims 1, 26, 44, 51, and 56 of the '775 Patent in violation of 35 U.S.C. § 271(b), (c), and (f).  AT&T was aware and received notice of and has been aware of its infringement of the '775 Patent at least as early as the date that this Complaint was filed.

44.    From at least the time AT&T has known of the '775 Patent, AT&T has induced and continues to induce others to infringe at least claims 1, 26, 44, 51, and 56 of the '775 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe by encouraging end users, including clients and customers, to infringe.

45.    AT&T has induced and continues to induce customers and others to directly infringe claims 1 and 51 when, for example, they use the AT&T Internet services with Wi-Fi and obtain benefits such as enjoying faster and more secure Wi-Fi use. AT&T has induced and continues to induce customers to directly infringe claims 26, 44, and 56 when, for example, they use the routers, tablets, smartphones, and other accused products sold by AT&T that have Wi-Fi 5 (and later) capability in the case of downlink devices or Wi-Fi 6 (and later) capability in the case of uplink devices.

46.    AT&T has actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '775 Patent with the knowledge and intent that customers and others will use AT&T's Internet services with Wi-Fi, and with the

knowledge and intent to encourage and facilitate customers' and others' infringement through the distribution of AT&T Internet services with Wi-Fi and/or creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to AT&T Internet services with Wi-Fi, such as:

https://www.att.com/internet/upgrading-to-wi-fi-6/
https://fiber.att.com/internet/wi-fi/
https://www.att.com/wi-fi/
https://www.business.att.com/resources/knowledge-center/wi-fi-6-vs-5g.html
https://more.att.com/currently/this-month/fiber/next-gen-wi-fi-6-and-our-new-gateway
https://www.business.att.com/learn/what-is-wifi-6.html
https://www.att.com/internet/what-is-all-fi/
https://www.att.com/wi-fi/extender/
https://about.att.com/pages/internet-fiber.html
https://www.att.com/support/article/u-verse-high-speed-internet/KM1011652/
https://www.att.com/support/article/u-verse-high-speed-internet/KM1010095/
https://www.attsavings.com/internet/att-fiber
https://www.att.com/buy/phones/apple-iphone-13.html
https://www.att.com/buy/tablets/apple-ipad-air-13-inch-2024.html
https://www.youtube.com/watch?v=1XENrj7Actg

47.     AT&T has also contributed to and continues to contribute to the infringement of claims 1, 26, 44, 51, and 56 of the '775 Patent in violation of 35 U.S.C. § 271(c) and (f) by, among other things, making, using, offering to sell, selling, and/or importing the components of the AT&T Internet services with Wi-Fi, including Wi-Fi 5 (and later) or Wi-Fi 6 (and later) enabled routers, access points, and related products and services.

48.     AT&T makes, uses, offers to sell, sells, and/or imports such products with the knowledge that they are especially designed for use in and constitute a material part of the claimed systems of claims 1 and 51 of the '775 Patent, and are not a staple article of commerce suitable for substantial non-infringing use.  For example, AT&T actively and knowingly sells components of the infrastructure for its AT&T Internet services with Wi-Fi and provides customer support, installation, instruction materials, and/or other technical information to customers for the use of

such products as a component of the systems in the claims. Also, AT&T makes, uses, offers to sell, sells, and/or imports such products with the knowledge that they are especially designed for use in and constitute a material part of the claimed devices of claims 26, 44, and 56 of the '775 Patent, and are not a staple article of commerce suitable for substantial non-infringing use. As another example, AT&T actively and knowingly sells devices, tablets, and smartphones that run on its Internet services with Wi-Fi and provides customer support, installation, instruction materials, and/or other technical information to customers for the use of such products as a component of the client devices in the claim.

49.    AT&T's infringement of the '775 Patent is willful. As set forth above, AT&T has had knowledge of the '775 Patent since at least the filing of this Complaint and has been aware since such time of its infringement of the '775 Patent. Since at least the filing of this Complaint, AT&T (a) has had knowledge of, or has been willfully blind to, the existence of the '775 Patent, and (b) has had knowledge, or has been willfully blind, that its conduct constitutes infringement, inducement, and/or contributory infringement of the '775 Patent.

50.    As a result of AT&T's infringement of the '775 Patent, Cornell has suffered monetary damages, and will continue to suffer damages in the future, and is entitled to no less than a reasonable royalty for AT&T's infringement of the claimed inventions of the '775 Patent, together with interest and costs as determined by the Court.

51.    AT&T does not have any rights to use the '775 Patent as alleged in this Complaint.

52.    Cornell has complied with 35 U.S.C. § 287.

53.    Cornell's Asserted Patents are publicly available from the United States Patent Office and other online resources such as Google Patents.

54.    AT&T's acts of direct and indirect infringement have caused and continues to cause

damage to Cornell.  Cornell is entitled to damages in accordance with 35 U.S.C. §§ 271, 281, and 284 sustained as a result of AT&T's wrongful acts in an amount to be proven at trial.

## COUNT II: INFRINGEMENT OF THE '733 PATENT

55.    Cornell incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein.  Cornell further alleges the below upon information and belief.

56.    AT&T has directly infringed and continues to directly infringe the '733 Patent, either literally or under the doctrine of equivalents, including at least claims 1 and 16 under 35 U.S.C. § 271(a), by making, using, offering to sell, selling, and/or importing into the United States Wi-Fi 6 (and later) enabled uplink and downlink products, such as Wi-Fi routers, access points, smartphones, client devices, and related products and services.

57.    AT&T directly infringes at least claim 1 of the '733 Patent by, for example, selling tablets and smartphones such as, among others, the Google Pixel, iPad, and iPhone, or other devices that run on the Wi-Fi 6 (and later) network.  Beyond selling tablets or smartphones, AT&T provides the entire infrastructure through the installation and servicing of the routers and access points that enables the function of all terminals.

58.    AT&T directly infringes at least claim 16 of the '733 Patent, for example, when it sells and/or provides Internet service including Wi-Fi 6 access points, hotspots, extenders and/or wireless routers, as well as when its employees or agents install, use, service, and/or maintain AT&T's Internet services that support Wi-Fi 6 at customers' residences or places of business. Specifically, AT&T installs routers, access points, hotspots, and wireless extenders, and connects them with clients at these locations to provide Internet service.  The access points for relevant accused products are found locally in AT&T's customers' residences and places of business. Those residences and places of business are located in the Eastern District of Texas.  AT&T exercises control over the equipment that it installs by servicing, maintaining, configuring, and

otherwise operating the equipment and obtains benefits including monthly subscription, maintenance, and support fees.

59.    An illustrative example of the manner in which the accused products and services infringe the '733 Patent is set out in Exhibit D.

60.    Upon information and belief, AT&T has indirectly infringed and continues to indirectly infringe at least claims 1 and 16 of the '733 Patent in violation of 35 U.S.C. § 271(b), (c), and (f).  AT&T was aware and received notice of and has been aware of its infringement of the '733 Patent at least as early as the date that this Complaint was filed.

61.    From at least the time AT&T has known of the '733 Patent, AT&T has induced and continues to induce others to infringe at least claims 1 and 16 of the '733 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe by encouraging end users, including clients and customers, to infringe.

62.    AT&T has induced and continues to induce customers and others to directly infringe claim 1 when, for example, they sell AT&T customers routers, tablets, smartphones, and other accused products sold by AT&T that have Wi-Fi 6 (and later) capability in the case of uplink devices.  AT&T's customers directly infringe claim 1 when, for example, they use the tablets, smartphones, and other accused products sold by AT&T that have Wi-Fi 6 (and later) capability in the case of uplink devices.  AT&T has induced and continues to induce customers and others to directly infringe claim 16 when, for example, they install, use, service, and/or maintain AT&T's Internet services that support Wi-Fi 6 at customers' residences or places of business.  AT&T's customers directly infringe claim 16 when, for example, they use AT&T Internet services with Wi-Fi and obtain benefits such as enjoying faster and more secure Wi-Fi use.

63.    AT&T has actively, knowingly, and intentionally induced, and continues to

14

actively, knowingly, and intentionally induce, infringement of the '733 Patent with the knowledge and intent that customers and others will use AT&T's Internet services with Wi-Fi, and with the knowledge and intent to encourage and facilitate customers' and others' infringement through the distribution of AT&T Internet services with Wi-Fi and/or creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to AT&T Internet services with Wi-Fi, such as:

https://www.att.com/internet/upgrading-to-wi-fi-6/
https://fiber.att.com/internet/wi-fi/
https://www.att.com/wi-fi/
https://www.business.att.com/resources/knowledge-center/wi-fi-6-vs-5g.html
https://more.att.com/currently/this-month/fiber/next-gen-wi-fi-6-and-our-new-gateway
https://www.business.att.com/learn/what-is-wifi-6.html
https://www.att.com/internet/what-is-all-fi/
https://www.att.com/wi-fi/extender/
https://about.att.com/pages/internet-fiber.html
https://www.att.com/support/article/u-verse-high-speed-internet/KM1011652/
https://www.att.com/support/article/u-verse-high-speed-internet/KM1010095/
https://www.attsavings.com/internet/att-fiber
https://www.att.com/buy/phones/apple-iphone-13.html
https://www.att.com/buy/tablets/apple-ipad-air-13-inch-2024.html
https://www.youtube.com/watch?v=1XENrj7Actg

64.     AT&T has also contributed to and continues to contribute to the infringement of claims 1 and 16 of the '733 Patent in violation of 35 U.S.C. § 271(c) and (f) by, among other things, making, using, offering to sell, selling, and/or importing the components of the AT&T Internet services with Wi-Fi, including Wi-Fi 6 (and later) enabled routers, access points, hotspots, extenders, client devices, smartphones, and related products and services.

65.     AT&T makes, uses, offers to sell, sells, and/or imports such products with the knowledge that they are especially designed for use in and constitute a material part of the claimed devices of claim 1 of the '733 Patent, and are not a staple article of commerce suitable for substantial non-infringing use.  As an example, AT&T actively and knowingly sells devices,

tablets, and smartphones that run on its Internet services with Wi-Fi and provides customer support, installation, instruction materials, and/or other technical information to customers for the use of such products as a component of the client devices in the claim.  Moreover, AT&T makes, uses, offers to sell, sells, and/or imports such products with the knowledge that they are especially designed for use in and constitute a material part of the claimed system of claim 16 of the '733 Patent, and are not a staple article of commerce suitable for substantial non-infringing use.  As another example, AT&T actively and knowingly sells components of the infrastructure for its AT&T Internet services and provides customer support, installation, instruction materials, and/or other technical information to customers for the use of such products as a component of the systems in these claims.

66.    AT&T's infringement of the '733 Patent is willful.  As set forth above, AT&T has had knowledge of the '733 Patent since at least the filing of this Complaint and has been aware since such time of its infringement of the '733 Patent.  Since at least the filing of this Complaint, AT&T (a) has had knowledge of, or has been willfully blind to, the existence of the '733 Patent, and (b) has had knowledge, or has been willfully blind, that its conduct constitutes infringement, inducement, and/or contributory infringement of the '733 Patent.

67.    As a result of AT&T's infringement of the '733 Patent, Cornell has suffered monetary damages, and will continue to suffer damages in the future, and is entitled to no less than a reasonable royalty for AT&T's infringement of the claimed inventions of the '733 Patent, together with interest and costs as determined by the Court.

68.    AT&T does not have any rights to use the '733 Patent as alleged in this Complaint.

69.    Cornell has complied with 35 U.S.C. § 287.

70.    Cornell's Asserted Patents are publicly available from the United States Patent

Office and other online resources such as Google Patents.

71.    AT&T's acts of direct and indirect infringement have caused and continues to cause damage to Cornell.  Cornell is entitled to damages in accordance with 35 U.S.C. §§ 271, 281, and 284 sustained as a result of AT&T's wrongful acts in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Cornell prays for the following relief:

72.    A judgment in favor of Cornell that AT&T has infringed, either literally and/or under the doctrine of equivalents, one or more claims of the Asserted Patents;

73.    A judgment and order requiring AT&T to pay Cornell its past damages, costs, expenses, and pre-judgment and post-judgment interest for AT&T's infringement of the Asserted Patents;

74.    A judgment and order requiring AT&T to provide an accounting and to pay supplemental damages to Cornell, including without limitation, pre-judgment and post-judgment interest;

75.    A judgment that AT&T's infringement of the Asserted Patents has been willful;

76.    A judgment and order requiring AT&T to pay Cornell treble damages and prejudgment interest under 35 U.S.C. § 284 as a result of, *inter alia*, AT&T's willful infringement of the Asserted Patents;

77.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Cornell its reasonable attorneys' fees against AT&T;

78.    Injunctive relief in that AT&T, its affiliates, subsidiaries, officers, agents, servants, employees, and successors and assigns, and other persons who are in active concert or participation with anyone in the foregoing, be enjoined from infringement of the Asserted Patents, including

but not limited to an injunction of making, using, offering to sell, selling within the United States, and importing into the United States, products that infringe the Asserted Patents; and

79. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Cornell demands a trial by jury for all issues so triable.

Dated: January 21, 2025

Respectfully submitted,

 */s/ Robert F. Kramer*
Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@krameralberti.com
David Alberti
CA Bar No. 220265 (Admitted E.D. Texas)
dalberti@krameralberti.com
Sal Lim
CA Bar No. 211836 (Admitted E.D. Texas)
slim@krameralberti.com
Russell S. Tonkovich
CA Bar No. 233280 (Admitted E.D. Texas)
rtonkovich@krameralberti.com
**KRAMER ALBERTI**
**LIM & TONKOVICH LLP**
950 Tower Lane, Suite 1725
Foster City, California 94404
Telephone: (650) 825-4300
Facsimile: (650) 460-8443

Nicole Glauser
Texas Bar No. 24050694
nglauser@krameralberti.com
**KRAMER ALBERTI**
**LIM & TONKOVICH LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (737) 256-7784
Facsimile: (650) 460-8443

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

Attorneys for Plaintiffs
*Cornell University and Cornell*
*Research Foundation, Inc.*